Kenneth CARTER, Plaintiff–Appellant,

v.

Harold PETERS, III, Defendant–
Appellee.

No. 93–3328.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1994.

Decided June 2, 1994.

Donald S. Honchell (argued), Office of
Cook County Public Defender, Chicago, IL,
for petitioner-appellant.

Roland W. Burris, Office of Atty. Gen.,
Terence M. Madsen, Asst. Atty. Gen., Mar-
tha E. Gillis (argued), Crim. Appeals Div.,
Chicago, IL, for respondent-appellee.

Before CUMMINGS and MANION,
Circuit Judges, and MILLER, District
Judge.*

MILLER, District Judge.

Kenneth Carter committed armed robbery
and aggravated battery inside a church
shortly before a scheduled mass. His sen-
tence for those offenses reflects consider-
ation of what is now 730 ILCS 5/5–5–
3.2(a)(11), which deems as an aggravating
factor the occurrence of a state crime in or
on the grounds of a place of worship immedi-
ately before, during, or immediately after
worship services. Mr. Carter contends that
this Illinois statutory provision offends the

* The Honorable Robert L. Miller, Jr. of the United
States District Court for the Northern District of
Indiana is sitting by designation.

Establishment Clause, and appeals the district court's denial of his petition under 28 U.S.C. § 2254. Finding no violation of the Establishment Clause, we affirm.

■ Our analysis of an Establishment Clause issue is governed by the three-pronged test of *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2110–2111, 29 L.Ed.2d 745 (1971): "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" A statute that fails to satisfy any of these prongs violates the Establishment Clause. *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). Because Mr. Carter does not contend that the sentencing statute fosters excessive government entanglement with religion, we focus our inquiry on the first two prongs of the *Lemon* test. Our review is *de novo.* *Ticey v. Peters*, 8 F.3d 498, 500 (7th Cir.1993). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

■ The Illinois Appellate Court identified a secular purpose behind the sentencing statute. Although we agree with the Illinois court, we must note that, contrary to Mr. Peters' argument, the state court's finding does not control our analysis. Although we are bound by a state court's construction of a state statute, *R.A.V. v. City of St. Paul, Minn.*, —— U.S. ——, —— – ——, 112 S.Ct. 2538, 2541–2542, 120 L.Ed.2d 305 (1992); *New York v. Ferber*, 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 3361 n. 24, 73 L.Ed.2d 1113 (1982); *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561, 574 (7th Cir.1993), the Illinois Appellate Court did not construe the sentencing statute. A state court's assessment of a state statute's effect for First Amendment purposes does not bind a court in a federal habeas proceeding. *Wisconsin v. Mitchell*, —— U.S. ——, —— – ——, 113 S.Ct. 2194, 2198–2199, 124 L.Ed.2d 436 (1993). We must undertake our own analysis of the legislative purpose.

■ In determining the legislative purpose, the court may consider the statutory language and the legislative history, but the court is not required to accept a spurious stated legislative purpose. *Edwards v. Aguillard*, 482 U.S. 57?, 586–587, 107 S.Ct. 2573, 2578–2579, 96 L.Ed.2d 510 (1987); *Meek v. Pittenger*, 421 U.S. 349, 363, 95 S.Ct. 1753, 1762, 44 L.Ed.2d 217 (1975). Apart from the statute's incidental effects (which we discuss in conjunction with the second prong of the *Lemon* test), there is nothing to suggest a religious purpose behind the sentencing statute.

When viewed in the context of the fuller statute of which it is a part, the secular purpose of 730 ILCS 5/5–5–3.2(a)(11) is plain. The statute as a whole is designed to afford special protection to members of society who need additional protection. Sentencing courts are directed to consider whether the victim was sixty years of age or older, 730 ILCS 5/5–5–3.2(a)(8), whether the victim was handicapped, 730 ILCS 5/5–5–3.2(a)(9), or whether the accused was motivated by the victim's race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability or national origin. 730 ILCS 5/5–5–3.2(a)(10). Further, aggravation is found if the accused wore a bulletproof vest or held a position of trust or supervision with respect to a child, 730 ILCS 5/5–5–3.2(a)(13), (14), which appear to be designed to afford special protection to police officers and children.

The special protections afforded by these sentencing provisions do not amount to a legislative endorsement of being over age sixty or under age eighteen, or of being handicapped, or of being a police officer armed only with a weapon incapable of piercing a bulletproof vest. Instead, the statute recognizes that some members of society are easier prey for criminals, and seeks to heighten the penalty for offenders who target those persons.

Mr. Carter, of course, does not complain of the statutory aggravating factors just discussed, but there is no reason to believe that any different legislative purpose inspired the "place of worship" provision. As noted by the Illinois Appellate Court, the bill's sponsor stated that this provision would "give our clergy and parishioners the same protection which our police officers, teachers and nurses

have." *People v. Carter*, 228 Ill.App.3d 526, 170 Ill.Dec. 55, 61, 592 N.E.2d 491, 497 (1992) (quoting 83d Ill. Gen. Assembly, House Proceedings, March 24, 1983, at 44), *appeal denied*, 146 Ill.2d 635, 176 Ill.Dec. 807, 602 N.E.2d 461 (1992), *and habeas corpus denied sub nom., Carter v. Peters*, No. 93 C 2815, 1993 WL 335812 (N.D.Ill. Aug. 27, 1993). While we are not bound to accept that declaration, nothing in the legislative history or structure of the statute provides reason to disbelieve its accuracy as a statement of legislative purpose. *See Bowen v. Kendrick*, 487 U.S. 589, 604, 108 S.Ct. 2562, 2571, 101 L.Ed.2d 520 (1988); *Lynch v. Donnelly*, 465 U.S. 668, 680, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984).

Mr. Carter makes several arguments with respect to whether the statute's purpose is secular or religious. He notes that the statute applies only if the place of worship is being used for a worship service rather than for some other purpose, and that public assemblies in secular facilities such as libraries are no less vulnerable to crime but are left unprotected. We note further that the "place of worship" provision is the only portion of the statute that focuses on a place rather than upon the accused or the victim. Any crime, by an accused of any background, committed against any victim, may produce an enhanced sentence if committed on the grounds of a church, synagogue, or mosque near the time of a service; no other place in the state of Illinois appears to be granted such protection.

We do not believe that the lack of legislative precision betrays a non-secular intent. We agree with Mr. Carter that other buildings are open to the public and thus are potential sources of easy targets for crime. We do not believe, however, that the legislature must close its eyes to the traditional absence of security measures surrounding worship services, which renders those attending such services more vulnerable to criminal activity.

Concluding that the statute has a secular provision does not conclude the inquiry under the *Lemon* test; it remains to be determined whether the statue's principal or primary effect advances or inhibits religion. *See, e.g.,* *Committee for Public & Religious Liberty v. Nyquist*, 413 U.S. 756, 773–774, 93 S.Ct. 2955, 2965–2966, 37 L.Ed.2d 948 (1973). This statute affords to those attending worship services special protection that is not provided to persons attending any other type of assembly in the state of Illinois. Mr. Carter argues that this special protection conveys a message of endorsement of religion: those attending worship services at a place of worship receive this protection, while others do not.

Any such message, however, is an incidental and indirect effect of the statute, not a principal or primary effect. The statute's primary effect is not on those deciding whether to attend religious services, but on persons such as Mr. Carter, who commit crimes in or around places of worship during or near times of worship services. Such incidental, indirect benefits to religion do not offend the second prong of the *Lemon* test. *Widmar v. Vincent*, 454 U.S. 263, 273, 102 S.Ct. 269, 272, 70 L.Ed.2d 440 (1981); *Committee for Public & Religious Liberty v. Nyquist*, 413 U.S. at 771, 93 S.Ct. at 2964. The statute does not appear to take a position on questions of religious belief or make matters of religion affect any person's standing in the community, *see County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 593–594, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), because the protection is afforded to anyone on the grounds of the church, synagogue, or mosque, and not just to persons attending the services.

Because the challenged statute has a secular legislative purpose and a primary effect that neither advances nor inhibits religion, and because the statute does not foster excessive governmental entanglement with religion, the statute now codified at 730 ILCS 5/5–5–3.2(a)(11) does not infringe the Establishment Clause. Accordingly, Mr. Carter's enhanced sentence was not unconstitutional, and the district court properly denied his petition under 28 U.S.C. § 2254. The district court is AFFIRMED.