**Andrea METZL, Plaintiff–Appellee,**

v.

**Robert LEININGER, State Superintendent of Education, Defendant–Appellant.**

No. 94–2563.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1995.

Decided June 19, 1995.

Robert B. Millner (argued), Robert B. Millner, David J. Stagman, Camille E. Ben-

nett, Sonnenschein, Nath & Rosenthal, Sylvia Neil, American Jewish Congress, Chicago, IL, for plaintiff-appellee.

Thomas A. Ioppolo, Daniel N. Malato (argued), Asst. Attys. Gen., Civ. Appeals Div., Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

POSNER, Chief Judge.

Christians believe that Jesus Christ was crucified on a Friday afternoon in the spring and that he rose from the dead the following Sunday. The crucifixion is commemorated on Good Friday, the resurrection on Easter Sunday. In 1941 Illinois made Good Friday a state holiday; state facilities, including schools (but not colleges or universities), were to be closed on that day. There is no contemporaneous legislative history but in the following year the governor of Illinois explained in a proclamation that Good Friday "is a day charged with special meaning to multitudes throughout the Christian world" and that Illinois had "lately given statutory recognition" to Good Friday by making it a "legal and school holiday throughout the State." He "commend[ed] the sacred rites and ceremonies of the occasion to thoughtful consideration of churchgoers and believers throughout our State." In 1989, the Illinois legislature rescinded Good Friday as a state holiday but retained it as a school holiday, and so it remains. 105 ILCS § 5/24-2. All public schools (below the college level) in the state are closed that day but the teachers are paid just as for other holidays. Schoolchildren are excused from attending school on other days if their religion requires their absence, 105 ILCS §§ 5/26-1, 5/26-2b; this alone scotches any argument that the law challenged in this case is necessary to accommodate the religious needs of Christian students in Illinois. And some school districts, apparently without thereby violating any state law, close for major Jewish holidays. But apart from Christmas and Thanksgiving, Good Friday is the only holiday of religious origin or character on which all the public schools of the state are closed, by virtue of the statute here attacked in a suit under 42 U.S.C. § 1983 by a public school teacher who objects, among other things, to the use of public funds derived from taxes that she pays to pay teachers for the Good Friday holiday. Her status as a taxpayer gives her standing to attack a practice, that of making Good Friday a paid school holiday, which her taxes support. *Flast v. Cohen*, 392 U.S. 83, 105–06, 88 S.Ct. 1942, 1955, 20 L.Ed.2d 947 (1968); *Gonzales v. North Township*, 4 F.3d 1412, 1416 (7th Cir.1993).

█ The district judge granted summary judgment for the plaintiff on the ground that the statute is an establishment of religion, and issued a permanent injunction, which has not been stayed and therefore was in force this past Good Friday, against enforcing the statute. 850 F.Supp. 740 (N.D.Ill.1994). Although the injunction is not set forth in a separate document, as Fed.R.Civ.P. 65(d) requires, but rather in the body of the judge's opinion, 850 F.Supp. at 750, our jurisdiction of the appeal is secure. The command in the opinion is unequivocal, and the defendant (the state superintendent of education—effectively, the state) has acknowledged that he can be held in contempt if he disobeys it. It is therefore not a nullity despite the failure to comply with Rule 65(d), so the defendant has standing to appeal. *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir.1992).

█ What is more, the district judge issued a declaratory judgment as well as an injunction, and a declaratory judgment is appealable without regard to Rule 65(d). *Abbs v. Sullivan*, 963 F.2d 918, 923–24 (7th Cir.1992); *Gjertsen v. Board of Election Commissioners*, 751 F.2d 199, 201 (7th Cir. 1984). It is true that like any other sort of judgment a declaratory judgment is supposed to be set forth in a separate document from the opinion. *American Inter–Fidelity Exchange v. American Re–Insurance Co.*, 17 F.3d 1018, 1020 (7th Cir.1994). Rule 58 so requires. But violations of Rule 58 are not jurisdictional. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam); *Abbs v. Sullivan, supra*, 963 F.2d at 923. Occasional statements suggesting that declaratory judgments are not

appealable unless entered in conformity with Rule 58, such as "if the opinion contains language awarding declaratory relief, but the judgment does not, the opinion has been reduced to dictum," and hence has no force, *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 527 (7th Cir.1988); see also *Bates v. Johnson,* 901 F.2d 1424, 1428 (7th Cir.1990), must like all legal generalizations be considered in their context. If it is plain what the judgment declares (as was not the case in *Azeez v. Fairman,* 795 F.2d 1296, 1297 (7th Cir.1986), leading us to conclude that there was no declaratory judgment before us) and it is also plain that the district court is finished with the case, then, even if Rule 58 has not been complied with, there is appellate jurisdiction.

■ We turn to the merits. When the Bill of Rights, which in the First Amendment forbids Congress to establish a church, was promulgated, there were established churches in several of the states, as there was, of course, in England and as there are to this day there and in most other European countries. An established church is one that is supported by taxes. What Illinois has done in closing the public schools on Good Friday is remote from the eighteenth-century, or for that matter the modern nonlawyer's, conception of creating or operating an established church. But in modern times the courts have interpreted the establishment clause to forbid government—state and local as well as federal—to promote one religion at the expense of others (or even religion in general at the expense of non-belief). *Board of Education v. Grumet,* — U.S. —, —, 114 S.Ct. 2481, 2487, 129 L.Ed.2d 546 (1994); *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 605, 109 S.Ct. 3086, 3107, 106 L.Ed.2d 472 (1989); *American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265, 270 (7th Cir.1986). This principle is qualified, however. As the cases upholding Sunday closing laws (of which more shortly) show, as well as *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), which permitted a city to exhibit a crèche (a scene depicting the birth of Jesus Christ in a manger) as part of a Christmas display, a law that promotes religion may nevertheless be upheld either be-

cause of the secular purposes that the law also serves or because the effect in promoting religion is too attenuated to worry about. The law may also be defensible as an accommodation of the rights of religious persons to the free exercise of their religion. But that is not a factor here, as we have already noted, since, wholly apart from the challenged law, public school students in Illinois who want to be excused from school on Good Friday for religious reasons are entitled to be excused without penalty save what is implicit in missing a day of school when school is in session.

Some holidays that are religious, even sectarian, in origin, such as Christmas and Thanksgiving, have so far lost their religious connotation in the eyes of the general public that government measures to promote them, as by making them holidays or even by having the government itself celebrate them, have only a trivial effect in promoting religion. Even Easter is becoming gradually secularized; in the week before this past Easter Sunday, a radio station in Chicago was advertising an opportunity to have your pet photographed with the Easter Bunny on Easter Sunday for $5. Good Friday, however, is not a secular holiday anywhere in the United States (with the possible exception of Hawaii, as we shall see). This is not merely our impression. It is the unanimous view of the theologians of diverse faiths who submitted affidavits in the district court. Christmas and Thanksgiving have accreted secular rituals, such as shopping, and eating turkey with cranberry sauce, that most Americans, regardless of their religious faith or lack thereof, participate in. Likewise with Easter egg hunts for children, not to mention photo sessions with the Easter Bunny. Good Friday has accreted no secular rituals. That should come as no surprise. Good Friday commemorates the execution of the Christian Messiah. Cf. *American Civil Liberties Union v. City of St. Charles, supra,* 794 F.2d at 271–73. It is a day of solemn religious observance, and nothing else, for believing Christians, and no one else. Unitarians, Jews, Muslims, Buddhists, atheists—there is nothing in Good Friday for them, as there is

in the other holidays we have mentioned despite the Christian origin of those holidays.

■ Illinois closes its schools on twelve holidays. Nine are purely secular. Two are religious in origin but secularized: Christmas and Thanksgiving. Only one of the holidays is a purely religious holiday, Good Friday, the holiday celebrated only by believing Christians. School districts are free to close their schools on the major holidays of other religions, but *all* public schools throughout the state are forced to close on Good Friday regardless of the preference of local school districts and no matter how small the number of students or teachers in a particular district who want to use the day for religious observances. The state has accorded special recognition to Christianity beyond anything that has been shown to be necessary to accommodate the religious needs of the Christian majority. The governor's proclamation made clear that the purpose was to encourage Christian religious observances. That is the natural effect as well. The state law closing all public schools on Good Friday makes the burden of religious observance lighter on Christians than on the votaries of other religions. The Christian does not have to absent himself from school on a school day, and so perhaps have to incur the inconvenience of a make-up exam on a later day, as the observant Jew might have to do if his school district decided not to close for any Jewish holidays. Such inconveniences are slight, as we have already noted. But the First Amendment does not allow a state to make it easier for adherents of one faith to practice their religion than for adherents of another faith to practice *their* religion, unless there is a secular justification for the difference in treatment.

The governor's proclamation is not definitive evidence of the statute's original purpose. And even if the purpose was exactly as he said, it might have changed in the 53 years since he spoke. If, moreover, the statute has accrued a secular justification, the effect of the statute in promoting Christianity—an effect that, to speak realistically, was probably never very great—might be diluted or even eliminated. Suppose, as the state argues, that the current purpose of the law is

merely to save the school system the expense of keeping schools open on a day when very few teachers and students can be expected to attend. If that purpose is understood, non-Christians will understand that the law is intended not to accord special, favorable recognition to Christianity but merely to recognize reality. There is no purpose in keeping schools open when no one, or almost no one, is there. The Illinois law that allows students to absent themselves from school when their religion so requires prevents the state from forcing students to attend school on Good Friday. If, therefore, not because of anything the state has done, but merely because of the preponderance of observant Christians throughout the state, very few students would show up at school on Good Friday, the state would be wasting its educational budget by keeping schools open on that day.

It is a question of fact, however, how many students and teachers, in each of the state's public school districts, would absent themselves from Good Friday if the challenged state law did not require the schools to be closed that day. It is a question of fact upon which no evidence was presented in the district court. We do not need evidence to determine that Christianity is the predominant religion of the people of Illinois; but we do need evidence to determine how many Christians, in each district, observe Good Friday. Not all, certainly. Perhaps not most. For we know that many Christians do not belong to a church, and it is a matter of common knowledge that many who do belong to a church (especially to a Protestant church) do not go to Good Friday services and also that those services are conducted in the early morning and in the evening, as well as during school hours. And since many religious Christians send their children to parochial schools or educate them at home, secular Christians may well predominate in the public schools, though this is another question on which there is no evidence. We know, moreover, that there are large demographic differences among the school districts of the state, and it cannot be assumed that religious attitudes in a rural school district in southern Illinois are identical to those prevailing in Chicago's suburbs. The fact

that six years ago the state rescinded Good Friday as a holiday for all state employees is some indication that nonobservance of Good Friday is widespread among the Christian population of Illinois, since presumably most employees of the state are Christian.

 When there is no evidence concerning a critical fact, here the feasibility of keeping the public schools of Illinois open on Good Friday, the allocation of the burden of production of evidence becomes critical. We think it properly belongs on the state in this case, though we cannot find any authority directly on point. On its face, and even without regard to the governor's proclamation, the challenged statute, given the unambiguously sectarian character of Good Friday, promotes one religion over others, and such a statute violates the establishment clause unless it has a secular justification. The existence of such a justification is in the nature of a defense, and the burden of producing evidence in support of a defense is, of course, normally on the defendant. E.g., *Sonicraft, Inc. v. NLRB*, 905 F.2d 146, 150 (7th Cir.1990). Economy in litigation requires that the burden of presenting evidence fall on the party that in the absence of such evidence would probably have no case, which here is the State of Illinois, given the character of the holiday that the state has chosen to recognize. Economy in litigation also requires that burdens of presenting evidence be assigned to the parties that can produce the necessary evidence at least cost. See generally 2 *McCormick on Evidence* § 337, pp. 429–30 (4th ed. 1992); 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 300[03] (1988). The State of Illinois should have a better idea of likely attendance if its schools are open on Good Friday than the plaintiff. Cf. *Menora v. Illinois High School Association*, 683 F.2d 1030, 1035 (7th Cir.1982).

We do not wish to make a fetish of the rules of evidence. The constitutionality of statutes is typically determined by reference to general considerations, values, intuitions, and other "legislative facts" (in the sense of considerations that typically influence legislative judgments) rather than to facts presented through testimony and other formal evidence subject to rules of evidence developed largely for the control of lay juries. Still, when the facts necessary for judgment, however they might be adduced, are missing in a case, the court has to decide who shall bear the onus for having failed to place them before the court. It seems to us that where as in this case the challenged law places the support of the state behind a wholly sectarian holiday and the only possible justification concerns the internal operations of a branch of state government, the burden of presenting whatever type of fact might support the justification should rest on the state. It was the state's decision to pitch its defense on the infeasibility of keeping the schools open on Good Friday. The question of feasibility is not one that can be settled as a matter of first or general principles. It requires a showing of fact that the state has not attempted to make.

Only one other case has directly addressed the question whether a Good Friday closing law violates the establishment clause, even though such laws are in effect in twelve other states besides Illinois. *Cammack v. Waihee*, 932 F.2d 765, 766–67, rehearing en banc denied, 944 F.2d 466 (9th Cir.1991). That case is *Cammack*, and though it upheld the law it did so in part on the basis of a factual determination (whether or not correct—for there was a vigorous dissent both to the panel opinion and to the denial of rehearing en banc) that in Hawaii Good Friday has been secularized, becoming the first day of a three-day spring weekend devoted to shopping and recreational activities that have about them, as Hamlet would have said, no relish of salvation. *Id.* at 775–76, 778–79. Illinois is not Hawaii. No one goes water skiing on Lake Michigan in mid-April. The defendants in our case admitted that "Good Friday is a religious day without the secular trappings of Christmas, for example." Apparently in Hawaii Good Friday *has* acquired secular trappings. Building on *Cammack*, Illinois might have argued that the contemporary purpose of the Good Friday public school closing law is to provide a long spring weekend, Good Friday being chosen rather than a different Friday in the spring, or a Monday, because many students and teachers would stay away from school anyway on

Good Friday even if school were open. Such an argument would take nourishment from the cases like *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), which uphold Sunday closing laws. If there is to be one day of the week on which all stores are closed for the convenience of merchants and their employees, the best choice, on purely secular grounds, is Sunday, because it is the day on which most stores would be closed anyway. Transposed to this case, the argument would be related to but distinct from the argument that it is infeasible to keep the schools open on Good Friday because only a handful of students would show up. Even if more than a handful would show up—even if most would show up—if fewer would show up than on any other Friday or Monday in the spring, it would be the natural choice for elongating a spring weekend. The argument is no more than hinted at in the state's brief ("students, parents and teachers have grown accustom [sic] to this day as a three-day weekend in the spring"), perhaps because its premise—that Illinois, like Hawaii, wants to create a long spring weekend in all its public schools—is false. Had Illinois made a forthright official announcement that the public schools shall be closed on the Friday before Easter in order to give students and teachers a three-day spring weekend, rather than to commemorate the crucifixion of Jesus Christ, we might have a different case.

The inevitability of selecting Sunday as the day for requiring stores to be closed was so plain that no evidence for the proposition was required. Indeed a heavy burden was placed on the plaintiffs to show if they could (they couldn't) that there was a feasible alternative. *Id.* at 453. No such inevitability attends the closing of public schools on Good Friday. For all we know, in many school districts in Illinois the public schools could be kept open on Good Friday with very little absenteeism and certainly without exerting the sort of competitive pressures that might in an earlier era have forced all retail stores to remain open on Sunday if some did.

With the Illinois statute enjoined, we can expect that many school districts in Illinois will decide to close their schools on Good Friday (according to newspaper accounts, Chicago closed its schools this past Good Friday, as did several other school districts), just as some school districts now close their schools on Jewish holidays. Maybe someone someday will bring a suit charging that a school district which closes its schools on a religious holiday is thereby promoting religion in violation of the establishment clause. Presumably the defense would be that in the particular school district the holding open of the schools on the particular religious holiday would be a waste of educational resources because so few students or teachers would show up for work. The defense might succeed, if factually supported. That we need not and, given the sensitivity of the issue, do not decide. All we hold today is that the State of Illinois has failed to show that its law closing the public schools *throughout the state* on Good Friday is necessary to prevent a wasteful expenditure of educational resources. In school districts in which too few students would absent themselves from school on that day to make it infeasible to keep the schools open, the statewide public school closing law, a law rooted in an explicit desire to promote the Christian religion, confers a benefit on Christian students that is vouchsafed to adherents to no other faith and that lacks any secular justification. Ordinarily, it is true, a state's choice of whether to proceed by statewide law or by local option is no business of the federal courts. E.g., *Wilbur v. Mahan*, 3 F.3d 214, 216 (7th Cir.1993); *Bieneman v. City of Chicago*, 864 F.2d 463, 471–72 (7th Cir.1988); cf. *Menora v. Illinois High School Ass'n*, *supra*, 683 F.2d at 1036. But in this case the choice of the statewide route fatally weakens the defense that the state has offered of the Good Friday school closing law—the defense that it is infeasible to keep schools open on days on which very few students would attend school.

We do not want to exaggerate the importance or likely impact of our decision. We said earlier and repeat that we doubt that the challenged law has much actual effect on the religious beliefs or observances of the people of Illinois, and if this is right then neither will the invalidation of the law. And we have left open the possibility that Illinois

can accomplish much the same thing either by officially adopting a "spring weekend" rationale for the law, in place of the governor's proclamation of a state *religious* holiday, or by moving to a system of local option for school districts. We recall that in our *St. Charles* case cited earlier, after this court upheld an injunction against the exhibition of a lighted cross at Christmas on the exterior of the firehouse, the private owner of a building across the street from the firehouse placed a lighted cross at Christmas on the outside of his building. Modern cases dealing with the establishment clause are largely about symbols, rather than about the practical reality of American religious practices. (See the majority and dissenting opinions in *Harris v. City of Zion*, 927 F.2d 1401 (7th Cir.1991).) Yet the *St. Charles* decision remains at least a symbolic vindication of the principle that government shall not join, whether at Christmas or on Good Friday, in the commemoration of Christianity's most solemn, most awesome, and most potent symbol: the Crucifixion.

AFFIRMED.

MANION, Circuit Judge, dissenting.

In 1941, the State of Illinois recognized Good Friday as a state holiday. Of course things were much different then. The world was under a cloud of war that would soon involve the United States, and constitutional challenges were not routinely filed whenever prayer or religion was in any way associated with a public entity. We do not know why the legislature made Good Friday a holiday in 1941 because there is no legislative history. We do know that in April of 1942, the Governor of Illinois issued a proclamation. He wrote:

> The hallowed traditions of almost two thousand years cluster around the Friday just preceding Easter Sunday. Good Friday, as it has come to be called, is a day charged with especial meaning to multitudes throughout the Christian world.

> Good Friday was lately given appropriate statutory recognition in Illinois. By enactment of the last regular session of our General Assembly, the day was made a legal and school holiday throughout the State.

> The widespread commemoration of Good Friday, always becoming, is eminently fitting in these times of unusual stress.

> NOW, THEREFORE, I, DWIGHT H. GREEN, Governor of the State of Illinois, by this official proclamation, do hereby direct attention to this significant day, Good Friday, which falls this year on April 3, and commend the sacred rites and ceremonies of the occasion to the thoughtful consideration of churchgoers and believers throughout the state.

While the Governor opined that the commemoration of Good Friday was "eminently fitting in these times of unusual stress" he did not reflect on why Good Friday became a state holiday. Still, the Good Friday holiday became part of the routine for two generations of Illinois state employees, students, and people who worked at banks.

In 1989 something changed. The State repealed the Good Friday holiday, again without leaving any stated reason for its decision. P.A. 86–754, § 6 (eff. Sept. 1, 1989). Yet the school holiday was left in place, 105 ILCS 5/24–2, and banks retained the option to close without violating the Illinois Promissory Note and Bank Holiday Act. 205 ILCS 630/17.

We can only speculate why Illinois first passed, and fifty years later repealed, the state holiday. Ms. Metzl speculates that the Good Friday holiday for school children was first created, and then left in place, because the State wanted to promote Christianity. She relies on the statement made by the Governor in 1942. But Governors tend to make solemn, even religious proclamations on other days, such as Memorial Day, the Fourth of July, Thanksgiving, and Christmas. Because those days are secularized— people attend races, go to the beach, eat turkey and exchange presents—whatever religious overtones they once had are sufficiently diluted to pass constitutional scrutiny. According to Ms. Metzl, Good Friday has not been secularized, and thus, is the only purely religious holdiay upon which the State school system shuts down. Therefore, she speculates, making Good Friday a holiday is *pref-*

*erential* treatment for Christians that violates the First Amendment's establishment clause.

The Board denies any allegation of religious discrimination and offers two related justifications for the Good Friday closing. First the Board claims that, whatever the origin of the Good Friday holiday, the school closing was preserved in 1989 because two generations of students and teachers have come to regard it as a traditional long weekend in Spring, and frequently, the beginning of Spring break. In this regard, the Board claims that Good Friday is best treated like Christmas, Thanksgiving, or Sunday closing laws: a practice that may once have had a religious rationale, but is now secular, and therefore, it is said, constitutional. *Cf. McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Second, the state has argued that, to the extent religion was considered when the holiday was created in 1941 or preserved in 1989, the holiday is designed to accommodate the Good Friday observance of its large Christian population. And indeed, the State's desire to accommodate the religious practice of *every student* is apparent from the Code. The Code unequivocally provides that every student must be permitted to be absent for religious reasons and that no student should be penalized for such absences. The Code also allows local school boards to close school on days as they see fit, and it is uncontested that some local school boards have closed on Jewish holidays to accommodate the religious observance of their Jewish students.

Why the School Code treats Good Friday differently from other religious holidays requires some more information. According to the Board, teachers are deterred from giving examinations or covering new material on days with significant absenteeism because the whole class wastes time waiting for the absentees to catch up. Also Good Friday is treated differently under the School Code because the Christian student population is much larger than that of other religious groups. Thus the State estimates that there will be a higher degree of absenteeism. In support of this claim, the Board has offered statistics showing that Christianity is the most represented religion among United States citizens, and indeed, as of 1990 Christians compose 57.7%, and as of 1993 Jews represent 2.3%, of the state population. *Statistical Abstract of the United States* p. 72 (1994) (no percentages for other religious groups are given).

But Ms. Metzl thinks the Board is deceiving the public. She believes that the School Code should treat Good Friday like other religious holidays. She asserts that the State closes all its schools on Good Friday because the State wants to favor Christians over Jews, Muslims, and others. The court today believes it is obliged to agree with Ms. Metzl, because the Board has produced so little evidence. I disagree.

Fundamentally my disagreement concerns the allocation of the burden of proof. Unlike the court, I believe that the burden shifting method commonly employed with respect to civil rights claims should be employed with respect to this constitutional claim. Thus, while I acknowledge that Ms. Metzl's showing requires the Board to produce a justification for the Good Friday holiday, I think the Board's burden is just that: a burden of production. Therefore, the burden of persuasion—and risk of nonpersuasion—should remain with Ms. Metzl at all times. *Cf. Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks,* —— U.S. ——, —— ——, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993). And whatever the Board's burden with respect to its justification, Ms. Metzl always bears the burden of proof with respect to her case in chief. *See e.g., NLRB v. Transportation Management Corp.,* 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983); *cf. Sonicraft, supra.* So even if the Board has failed to prove its justification, we must still ask whether Ms. Metzl has proven her claim after we have examined all the evidence of record.

The record shows that Ms. Metzl has failed to carry her burden. Good Friday has been a school holiday for half a century yet no one detected religious discrimination for all those years. Other than the governor's rather innocuous proclamation in 1941, Ms. Metzl has

offered nothing that shows any present or original intent to favor Christianity over other religions. Surely Ms. Metzl must show something other than the mere fact that Good Friday is a holiday in order to prevail on her claim that the holiday is intended to favor Christians over Muslims, Jews, and others.

Such evidence is essential because the Board has offered two legitimate justifications for the Good Friday holiday and produced evidence in support of both. First, the Board has argued that students and teachers have come to regard Good Friday as a long weekend in Spring, and usually the beginning of Spring break. The record supports the Board's justification and indicates that the State shares its view, for it is uncontested that the Good Friday holiday was repealed for state workers and banks in 1989. As the court points out, the record does not show why the holiday was eliminated for public employees but not for public school students. Perhaps state employees had too many days off so this holiday had to go; after all for state employees each holiday off is one less day of work. Each holiday is not one less work day for students and teachers, however; it is one less day of summer vacation, so the school holiday could stay. Although such speculation should not allow either side to prevail, certainly repealing the Good Friday holiday for state employees and lifting the ban on banking is the opposite of pursuing religious discrimination in favor of Christianity. That repeal is a fact that cannot be disputed. I also note that the New York Stock Exchange, the National Association of Securities Dealers, the Options Clearing Corporation, and the Intermarket Clearing Organization, all close on Good Friday. And when the Securities and Exchange Commission polled member firms in 1985 to determine if they wanted to extend daily hours and/or open on Good Friday, the majority of respondents favored opening the market earlier each day, but staying closed on Good Friday. See SEC Notice: Proposed Rule Change Relating to 9:30 a.m. Opening, 50 Fed.Reg. 41283 at n. 3 (1985). This result, reached by more purely economic forces, supports the Board's claim that the Good Friday holiday has taken on a secular *raison d'etre* quite apart from its religious origins, albeit without distinctive secular trappings.

The Board's related justification for the Good Friday holiday is that, to the extent its religious nature was considered at all when the holiday was created in 1941, and preserved for schools in 1989, the holiday is designed to accommodate the large number of Christians in the student body and spare other students a school day wasted because of excessive absenteeism. The statistics referred to above support the Board's assertion. Also the School Code, especially as applied, belies any notion that it is designed to favor Christians over other religious sects. It is undisputed that several local school boards have used the local closing option to accommodate the religious practices of their Jewish students even though Jews comprise only 2.3% of the State's population. To its credit, the court has acknowledged this option for local school boards and says nothing to discourage that practice. This local practice supports the Board's assertion that school closings on religious holidays—Christian or Jewish—are simply a matter of expected absenteeism and its impact on the efficiency of the school system.

Admittedly, the Board has not produced much evidence as to why the Good Friday holiday was created or the number of probable absentees on that day, but the Board's marginal showing is easily explained given the facts of this case. For one thing, the state legislature, not the Board, created the holiday in 1941 and repealed it for all but the schools in 1989; and with no legislative history, the Board could only speculate about the legislature's motive or gather unofficial testimony about the reasons for the repeal. Further, Good Friday has been a school holiday for 54 years. Thus, it is not surprising that the Board did not ask present students whether they would take the day off if there was no holiday. And it would be silly and irrelevant to ask former students whether they would have skipped school if Good Friday was not a holiday. Whatever the case, it is undisputed that the Board has never taken such a poll. Under these circumstances, and given the evidence and inferences noted above, I do not agree that the Board's failure

to produce evidence of absenteeism defeats its claim that the purpose of the Good Friday holiday is an accommodation of religion rather than religious discrimination. *Cf. Soria v. Ozinga Bros., Inc.,* 704 F.2d 990, 996 n. 7 (7th Cir.1983) (failure to keep records did not give rise to adverse presumption where there was no evidence of willful destruction of existing records).

More fundamentally, I believe the evidence and inferences noted above show that Metzl has failed to carry her burden of proving that the *sole purpose* behind the Good Friday holiday, *see Lynch v. Donnelly,* 465 U.S. 668, 680, 681 n. 6, 104 S.Ct. 1355, 1362, 1363 n. 6, 79 L.Ed.2d 604 (1983); *Bowen v. Kendrick,* 487 U.S. 589, 602–03, 108 S.Ct. 2562, 2571, 101 L.Ed.2d 520 (1988), is the wholly impermissible purpose of favoring Christians over Muslims, Jews, and others. Both Ms. Metzl and the court rely upon the Governor's proclamation, but that political platitude was issued one year after the law was passed, shortly after America declared war, and it simply recommends the holiday to those who believe it has significance. And whatever the purpose of the "statutory recognition" given the holiday in 1941, its repeal in 1989 for all but the schools plainly indicates that the State is not trying to favor Christians over others. Thus, Ms. Metzl's claim really boils down to the mere fact that Good Friday is a Christian religious holiday that is treated differently from other religious holidays. From that simple unadorned fact she asks us to infer that the State retained the Good Friday holiday in 1989 for the purpose of favoring Christians over Muslims, Jews, and others. In short, Ms. Metzl has produced even less evidence than the Board. But in order to upset a 50 year law on the grounds that it is a "law respecting an establishment of religion," U.S. Const. amend I, she should bear the burden of proof and the risk of nonpersuasion. Because Ms. Metzl has failed to produce evidence that makes her inference of religious discrimination reasonable in light of competing inferences, *see Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), she has failed to satisfy that burden, and therefore, her claim must fail. For these reasons, I respectfully dissent.