Jane DOE and Richard Roe, Plaintiffs,

v.

The COUNTY OF MONTGOMERY,
ILLINOIS, a body politic and
corporate, Defendant.

No. 94–3015.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 8, 1996.

Donald M. Craven, Springfield, IL, Harvey Grossman, Jane M. Whicher, Chicago, IL, E. Glenn Rippie, F. Thomas Hecht, James M. Falvey, Chicago, IL, for plaintiffs.

Charles E. Hervas, Itasca, IL, Kathryn Dobrinic, Hillsboro, IL, for defendant.

### *OPINION*

RICHARD MILLS, District Judge:

It was Thomas Jefferson who said,

"I contemplate with sovereign reverence that act of the whole American people which declared that their legislature should 'make no law respecting an establishment of religion or prohibiting the free exercise thereof,' thus building a wall of separation between church and State."

> *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 164, 25 L.Ed. 244 (1878).

In sum, the *Establishment Clause* mandates *neutrality.*

### I.  Background

Jane Doe and Richard Roe, are residents of Montgomery County, Illinois. Montgomery County displays over the main and most prominent entrance to the County Courthouse—located in Hillsboro, Illinois—a permanent metal sign which states "THE WORLD NEEDS GOD."[1] The sign is at least ten feet long and approximately one and one-half feet high with lettering approximately one foot high. Its message is visible within several hundred feet.[2]

The sign—originally illuminated in neon—was placed initially on the Courthouse in approximately 1940 by the County Board at the request of the Federated Women's Bible Club, which is now defunct. The minutes of the County Board meeting initially approving the sign provide, in full, as follows:

Mrs. Hancock, of the Federated Bible Classes of Hillsboro, Illinois, spoke to the Board about the County Board endorsing a neon sign to be erected on the Court House reading "The World Needs God," and asked the County Board for permission to erect the sign, the cost to be paid by the Federated Bible Class, and the electric bill to be paid by the County Board. Several discussions followed after which there was a motion by Marshall, seconded by Wright that the County Board grant the right to erect the Neon sign on the Court House. Motion carried.

The sign was removed sometime in the 1960's for renovations to the Courthouse. The sign remained off the Courthouse for an unknown period of time.

In November of 1968, at the request of several local religious groups—namely, the Women's Christian Temperance Union, various churches of Hillsboro, and the Ministerial Association of Hillsboro—the County again placed the sign over the main entrance to the Courthouse. The County Board minutes describe the event as follows:

A delegation of ladies from the W.C.T.U. [Women's Christian Temperance Union] and the various churches of Hillsboro and Rev. Oscar Mayes, a representative of the Ministerial Assn. of Hillsboro, appeared before the Board to request that the sign "The World Needs God" be again put back on the Court House. The sign they said had been a feature of the Courthouse for over 30 years and that now more than at any time, the world did "need God." Supervisors Snyder and Wiegreffe expressed the thought that the sign should be put up. Supervisor Jordan remarked that the sign was taken down as a necessity when the Courthouse was sandblasted, but that if it were put back, the County should not be liable for the cost of repairing and maintaining it. Supervisor Grimm said that he had opinions both for replacing and not replacing it. The speaker for the

---

1. In May of 1994, a new Courthouse opened in Hillsboro. The old Courthouse—the subject of this action—however, remains the seat of local government in the County and houses the offices of the County Clerk, the County Assessor, the County Treasurer, the County Board, and the school district administrative offices. The old Courthouse also serves as a place of voter registration, a polling place, and a place where voters may vote by absentee ballot.

2. The County does not consider the exterior of the Courthouse to be a public forum. No other signs—neither private nor political—are displayed on the Courthouse.

W.C.T.U. said that she would speak for her group and take the responsibility to have the sign repaired, which was concurred in by various other speakers representing their church groups.

Motion by Jordan, seconded by Anderson, that the Board permit the sign to be put up, provided it is put in proper working order and maintained. Motion carried.

The County currently owns and maintains the sign. If the County desires, the sign may be removed at anytime.

In January of 1992, Doe and Roe, through their attorney, requested the removal of the sign as a violation of the First Amendment's Establishment Clause. In February of 1992, the County Board voted unanimously to refuse to remove the sign.

Doe and Roe then filed this action pursuant to 42 U.S.C. § 1983, asserting that the County's display and sponsorship of the sign violates the First Amendment's Establishment Clause, which is applicable to state and local governments through the Fourteenth Amendment. Doe and Roe seek a declaratory judgment that the display of the sign violates the Establishment Clause and a permanent injunction requiring the County to remove the sign and forbidding its display on the Courthouse in the future.

In April of 1994, this Court dismissed the case, concluding that Doe, Roe, and another plaintiff lacked standing to initiate the action.[3] *Doe v. Montgomery County*, 848 F.Supp. 832 (C.D.Ill.1994). On appeal, the Seventh Circuit affirmed in part, reversed in part, and remanded for further proceedings.[4] *Doe v. Montgomery County*, 41 F.3d 1156 (7th Cir.1994).

## II. Legal Standard—Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. Discussion—The Establishment Clause

■ The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. Amend. I, cl. 1. The Establishment Clause commands government neutrality with respect to religion, *Fleischfresser v. Directors of School Dist. 200*, 15 F.3d 680, 685 (7th Cir.1994), which means—at the very least—that the government is prohibited "from appearing to take a position on questions of religious belief." *County of Allegheny v. A.C.L.U.*, 492 U.S. 573, 594, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989).

■ The constitutionality of the County's sign is to be analyzed under the three-prong test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).[5] In order to pass constitutional mus-

---

3. The other plaintiff was Attorney Edward T. Stein, whose practice is based in Chicago.

4. The Seventh Circuit affirmed our holding that Attorney Stein lacked standing, but reversed and remanded as to the standing of Doe and Roe.

5. The County asks the Court not to apply the *Lemon* test, suggesting—at least implicitly—that

the test is no longer good law. The County's assertion, however, is wrong. *Lemon* is still the law of the land. *Lamb's Chapel v. Center Moriches School Dist.*, 508 U.S. 384, 395, 113 S.Ct. 2141, 2148, 124 L.Ed.2d 352 (1993); *Carter v.*

ter under the *Lemon* test, the publicly displayed religious sign must: (1) have a secular purpose; (2) neither advance nor inhibit religion in its principal or primary effect; and (3) not foster an excessive entanglement with religion. *Lemon*, 403 U.S. at 612, 91 S.Ct. at 2111. The County's conduct violates the Establishment Clause if it fails to meet any one of the three prongs. *Carter v. Peters*, 26 F.3d 697, 698 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *Fleischfresser*, 15 F.3d at 686.

■ Before the Court analyzes the sign under the *Lemon* test, however, the Court first must determine whether there is even an issue of religion. *Fleischfresser*, 15 F.3d at 687; *Gonzales*, 4 F.3d at 1418. This preliminary hurdle is cleared easily in this matter.[6] Indeed, the sign refers to "God"—the cornerstone of Christianity.[7] *See County of Allegheny*, 492 U.S. at 598, 109 S.Ct. at 3103 ("This praise to God in Christian terms is indisputably religious."). Moreover, concepts concerning "God" or a supreme being are intrinsically religious. *Davis v. Beason*, 133 U.S. 333, 342, 10 S.Ct. 299, 300, 33 L.Ed. 637 (1890) ("The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will."); *United States v. McIntosh*, 283 U.S. 605, 633, 51 S.Ct. 570, 578, 75 L.Ed. 1302 (1930) (Hughes, C.J., dissenting) ("The essence of religion is belief in a relation to God...."); *Edwards v. Aguil-*

lard, 482 U.S. 578, 599, 107 S.Ct. 2573, 2586, 96 L.Ed.2d 510 (1987) (Powell, J., concurring) ("[C]oncepts concerning God or a supreme being of some sort are manifestly religious."); *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1536 n. 7 (9th Cir.1985) ("Theism—exemplified by traditional Judaism, Christianity, and Islam—is the 'belief in the existence of one God....'"), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985); *Malnak v. Yogi*, 592 F.2d 197, 201 (3rd Cir. 1979) ("The original definition of religion prevalent in this country was closely tied to a belief in God.").

Now, to the *Lemon* test.

## A. Secular Purpose

■ " 'The purpose prong of the *Lemon* test asks whether government's actual purpose is to endorse or disapprove of religion.' " *Edwards v. Aguillard*, 482 U.S. 578, 585, 107 S.Ct. 2573, 2578, 96 L.Ed.2d 510 (1987) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 690, 104 S.Ct. 1355, 1368, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)). The primary concern embodied within the "secular purpose" prong "aims at preventing the relevant governmental decisionmaker ... from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters." *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 335, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987).

*Peters*, 26 F.3d 697, 698 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *Fleischfresser v. Directors of School Dist. 200*, 15 F.3d 680, 686 (7th Cir.1994); *Cohen v. City of Des Plaines*, 8 F.3d 484, 489 (7th Cir.1993) ("Though rumors of *Lemon* 's demise have abounded in the past several years, [citations omitted], the [Supreme] Court recently admonished that they are exaggerated. [citation omitted]. *Lemon*, then, remains the operative standard."), *cert. denied*, —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994); *Gonzales v. North Township of Lake County, Ind.*, 4 F.3d 1412, 1417–18 (7th Cir.1993) ("[T]he Supreme Court recently reminded us that *Lemon* is controlling precedent and should be the framework used by courts when reviewing Establishment Clause challenges.").

6. Doe and Roe submit the expert testimony of Professor Langdon Gilkey—the former Shailer

Mathews Professor of Theology at the University of Chicago Divinity School and presently the Kenny Distinguished Visiting Professor of Theology at Georgetown University—to attest to the religious character of the sign. Professor Gilkey declares that the sign is a reference to Christianity. The Court, however, does not believe expert testimony is necessary. As will be discussed, there is sufficient authority on the books which support the position that the sign is a reference to Christianity.

7. We are mindful that monotheistic religions other than Christianity may refer to their "creator," "deity," or "supreme being" as "God." Because, however, "Christianity is the predominant religion of the people of Illinois," *Metzl v. Leininger*, 57 F.3d 618, 621 (7th Cir.1995), and the people of Montgomery County, the Court will refer to the religious character of the sign as espousing Christian beliefs.

As discussed, the sign "THE WORLD NEEDS GOD" is undeniably a religious message. Indeed, it refers to and seeks—by its plain language—the redemptive powers of "God"—a basic tenet of Christianity. *See Harris v. City of Zion, Lake County, Ill.*, 927 F.2d 1401, 1412 (7th Cir.1991) ("[T]he county sent an unmistakable message that it supported and promoted Christian praise to God."), *cert. denied*, 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992) and *City of Rolling Meadows v. Kuhn*, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 897 (1992). Nevertheless, the Court will "defer to a municipality's sincere articulation of a religious symbol's secular purpose." *Gonzales*, 4 F.3d at 1419. However, "the stated purpose cannot be a sham to avoid a potential Establishment Clause violation." *Id.*

It appears that the County claims that the sign is intended to be a non-sectarian theistic expression reflecting the history and tradition of the people of Montgomery County, and not a religious icon.[8] The Court has numerous problems with that argument.

*First*, the obvious. The sign is *not* non-sectarian. *See Gonzales*, 4 F.3d at 1415 ("Apparently the trustee was unaware of the fact that religions other than Christianity exist."); *A.C.L.U. v. City of St. Charles*, 794 F.2d 265, 271 (7th Cir.1986) ("Such a display is not only religious but also sectarian. This is not just because some religious Americans are not Christians."), *cert. denied*, 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986). As noted several decades ago by the Supreme Court, "[a]mong religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism and others." *Torcaso v. Watkins*, 367 U.S. 488, 495 n. 11, 81 S.Ct. 1680, 1683 n. 11, 6 L.Ed.2d 982 (1961). And, as more recently noted by Chief Judge Pos-

ner, modern Establishment Clause jurisprudence effectively treats "the nonreligious as a sect, the sect of nonbelievers." *City of St. Charles*, 794 F.2d at 270.

Thus, perhaps the County's reference to the sign as "non-sectarian" is more accurately characterized as a statement that the sign does not differentiate among the individual sects within the larger sect or creed of Christianity. If so, the unconstitutionality of the County's conduct is now apparent. As noted recently by the Supreme Court, the unfortunate and sad history of this Nation "contains numerous examples of official acts that endorsed Christianity specifically." *County of Allegheny*, 492 U.S. at 604, 109 S.Ct. at 3107. The Supreme Court stressed that "this heritage of official discrimination against non-Christians has no place in the jurisprudence of the Establishment Clause" and must come to an end.[9] *Id.* at 604–05, 109 S.Ct. at 3107.

*Second*, to argue that the sign was intended to reflect the history and tradition of the people of Montgomery County ignores the original and subsequent motivation for placing the sign on the Courthouse. As noted, the sign was placed on the Courthouse initially at the request of the Federated Women's Bible Club and subsequently—after being removed for Courthouse renovations—at the request of the Women's Christian Temperance Union, various churches, and Reverend Mayes of the Ministerial Association of Hillsboro. Thus, the clear evidence points to a purpose motivated by religious sentiment—namely Christian. *See Gonzales*, 4 F.3d at 1421 ("We believe the evidence contradicts the Township's statement of purpose and that, indeed, the religious symbol here was not intended to, and does not now, serve a secular purpose.").

*Third*, the County is burdened with the task of producing evidence in support of its

---

**8.** The County seeks to avoid the application of the *Lemon* test. Its arguments, therefore, are not outlined in a manner consistent with *Lemon*. Thus, it is difficult to apply the County's arguments to the *Lemon* prongs.

**9.** As noted by the Supreme Court, in the early days of our country the Establishment Clause was probably "understood to protect only the diversity within Christianity." *County of Alleghe-*

*ny*, 492 U.S. at 590, 109 S.Ct. at 3099. The Supreme Court, however, has squarely "rejected the proposition that the Establishment Clause is to be interpreted in light of any favoritism for Christianity that may have existed among the Founders of the Republic." *Id.* at 605 n. 55, 109 S.Ct. at 3107 n. 55 (citing, *Wallace v. Jaffree*, 472 U.S. 38, 52, 105 S.Ct. 2479, 2487, 86 L.Ed.2d 29 (1985)).

"history and tradition" argument. *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir.1995). It has not come forward with any evidence in support of its position, other than the fact that the sign has been present on the Courthouse for over fifty years.[10] But that is not sufficient. *Harris*, 927 F.2d at 1414 (7th Cir.1991) ("With such explicit religious design behind the seal's original adoption in 1902, *something more than a perfunctory appeal to history is required to legitimize the underlying purpose* of the particular seal.") (emphasis ours).[11]

Accordingly, there is no evidence that the purpose of the sign was ever intended to reflect the history and tradition of the people of Montgomery County, rather than promoting Christian religious ideals. Indeed, the historical motivations underlying the placement of the sign upon the Courthouse speak for themselves. The County has not established a secular purpose for the sign.[12] The County therefore has failed the first prong of the *Lemon* test.[13]

**10.** Over two years after Doe and Roe initiated this action, the County submitted an application to have the Courthouse deemed to be an historical site. Sometime thereafter, the Courthouse was placed on the National Register of Historic Places. The Court is not aware of any authority which would allow the circumvention of the Constitution due to the post-hoc attainment of historical status—the historical status of the Courthouse is of no relevance to the Court's analysis. *See Gonzales*, 4 F.3d at 1421 ("We find that *Lemon* does not permit a municipality to exempt an obviously religious symbol from constitutional strictures by attaching a sign dedicating the symbol to our honored dead.").

**11.** *Harris* is somewhat analogous to the instant case. In *Harris*, the City of Zion adopted a corporate seal in 1902 at the request of Reverend John Alexander Dowie, founder of the Christian Catholic Church. *Id.* at 1403. The seal consisted of a shield draped with a ribbon that read "God Reigns." *Id.* at 1404. The shield was divided into four sections—the left section contained a Latin cross. *Id.* In 1986, the City passed a resolution to retain the seal for "historical" purposes. *Id.* at 1413–14. Certainly, *Harris* presented a scenario more compelling than the instant case for concluding that an appeal to history could satisfy the "secular purpose" prong. The Seventh Circuit, however, was not persuaded by the City's argument. *Id.* at 1414.

**12.** The County also argues that the statement "THE WORLD NEEDS GOD" is no different than the statement "In God We Trust." The

## B. Principal or Primary Effect

Under the second prong of the *Lemon* test, the sign "must have a 'principal or primary ... effect that neither advances nor inhibits religion.'" *Cohen v. City of Des Plaines*, 8 F.3d 484, 491 (7th Cir.1993) (quoting, *Lemon*, 403 U.S. at 612, 91 S.Ct. at 2111), *cert. denied,* —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994). "The message conveyed by a religious symbol determines whether it advances or inhibits religion in its principal or primary effect." *Gonzales*, 4 F.3d at 1421. If the message conveyed by the sign is the "government endorsement or advancement of religion" the sign has failed the second prong. *Id.* At the core of the second prong "is the notion that 'government ... may not place its prestige, coercive authority, or resources behind a single religious faith or behind religious belief in general....'" *Cohen*, 8 F.3d at 491.

As we have discussed, the sign "THE WORLD NEEDS GOD" is a promotion or

County's argument is misplaced. As noted repeatedly by the Seventh Circuit, the reason the phrase "In God We Trust"—and other symbols such as a Christmas tree and a five-pointed star—withstand constitutional defeat is because they have lost "religious significance." *Sherman v. Community Consol. Dist.*, 980 F.2d 437, 447 (7th Cir.1992), *cert. denied,* 508 U.S. 950, 113 S.Ct. 2439, 124 L.Ed.2d 658 (1993); *City of St. Charles*, 794 F.2d at 271. As will be discussed, the sign at issue is deeply religious to the people of Montgomery County.

The County also argues that the sign is akin to ceremonial deism, citing *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). That argument, however, is flawed fundamentally—there is nothing analogous to a ceremony here. Keep in mind, also, that the ceremonial prayer at issue in *Marsh* contained no references to Christ. *Marsh*, 463 U.S. at 793 n. 14, 103 S.Ct. at 3337; *County of Allegheny*, 492 U.S. at 603, 109 S.Ct. at 3106 ("The legislative prayers involved in *Marsh* did not violate this principle because the particular chaplain had 'removed all references to Christ.' [citation omitted]. Thus, *Marsh* plainly does not stand for the sweeping proposition Justice Kennedy apparently would ascribe to it....").

**13.** As noted, to pass constitutional muster, the County must satisfy every prong of the *Lemon* test. Because the County failed the first prong, our analysis could end here. The Court will, however, analyze this case in its entirety.

endorsement of Christianity. By its plain language, the sign's message endorses and praises the redemptive powers of "God"—the supreme being at the heart of Christianity. It sends the message that the world needs to be rescued or saved by "God." We must conclude that the sign clearly favors and supports Christianity.[14] *See Harris*, 927 F.2d at 1412 ("[T]he county sent an unmistakable message that it supported and promoted Christian praise to God."). That is not permissible under the Constitution. *County of Allegheny*, 492 U.S. at 605, 109 S.Ct. at 3107 ("Whatever else the Establishment Clause may mean (and we have held it to mean no official preference even for religion over nonreligion [citation omitted]) *it certainly means at the very least that government may not demonstrate a preference for one particular sect or creed (including a preference for Christianity over other religions).*") (emphasis ours).

Because the sign is prominently displayed on the County's Courthouse—which is under the County's control and is devoted to and houses numerous governmental functions—the County's endorsement and approval of the sign is unavoidable. *American Jewish Congress v. City of Chicago*, 827 F.2d 120, 128 (7th Cir.1987) ("Because City Hall is so plainly under government ownership and control, every display and activity in the building is implicitly marked with the stamp of government approval."); *Harris*, 927 F.2d at 1412 ("Like . . . the City Hall Building in *American Jewish Congress*, the corporate seal of a municipality is 'plainly under government control . . .' (and is) a clear symbol of government power.").

Consequently, even if the County's "history and tradition" argument was sufficient to pass muster under the first prong of the *Lemon* test, the County has failed the second prong—the County's display of the sign on its Courthouse conveys a message of support for Christianity[15] which is inconsistent with Establishment Clause jurisprudence.[16]

## C. Excessive Entanglement

■ "[E]ntanglement between the state and religion is simply a question of kind and degree." *Gonzales*, 4 F.3d at 1423. Here, the County initially and subsequently erected the sign at the behest of various Christian religious organizations. The County currently owns, finances, and maintains the sign. The sign is defended by people of Montgomery County by resorting—almost exclusively—to religious beliefs. This appears to be the type of situation that falls within the pale and qualifies as an excessive entanglement between the County and the religion of Christianity.

14. The County admittedly takes no position on the effect of the sign or the message it sends. The County claims it means different things to different people. The record, however, is replete with letters and petitions from residents of Montgomery County confirming the deeply religious, Christian message conveyed by the sign. In fact, there is a petition with approximately 200 signatures that reads: "No place does [the Constitution] say separation of church and state." Thus, any suggestion that the sign sends no Christian religious message not only ignores the obvious, but also the undisputed factual record.

15. To the extent the County is arguing that its "history and tradition" neutralizes the religious effect of the sign, a similar argument has already been rejected by the Seventh Circuit. In *Gonzales*, the defendant argued that the duration—approximately 40 years—of its display of a crucifix reinforced its memorial or landmark status and secular effect. *Gonzales*, 4 F.3d at 1422. The Seventh Circuit recharacterized the argument as: "the longer the violation, the less violative it becomes." *Id.* In rejecting that argument, the Seventh Circuit stated: "We do not accept this sort of bootstrapping argument as a defense to an Establishment Clause violation, nor have we found any other case that adopted this reasoning." *Id.*

16. Unlike the vast majority of Establishment Clause cases (where a particular religious symbol is intended to be displayed for a short period of time, usually around the Christmas season), the sign here is displayed on the Courthouse 24 hours a day and 365 days a year. Both the Supreme Court and the Seventh Circuit have recognized that such a situation presents a more compelling scenario for finding a constitutional violation. *County of Allegheny*, 492 U.S. at 606–07, 109 S.Ct. at 3107–08 ("[S]uch an obtrusive year-round religious display would place the government's weight behind an obvious effort to proselytize on behalf of a particular religion."); *Harris*, 927 F.2d at 1412 ("In fact, the . . . seal presents a more compelling case for finding the challenged display unconstitutional. The City's seal is a permanent statement that is viewed year-round. . . .").

## IV. Conclusion

The Establishment Clause demands government—Federal, State, and Local—neutrality with respect to religious beliefs. A governmental body is prohibited from promoting or favoring one religion at the expense of others, or religion in general at the expense of non-belief. *Metzl*, 57 F.3d at 620.

The County's display of the sign "THE WORLD NEEDS GOD" upon the facade of the Courthouse supports Christianity.

That is a violation of the Establishment Clause.[17]

*Ergo*, Doe and Roe's motion for summary judgment is ALLOWED. The County's motion for summary judgment is DENIED.

---

17. The County offers a one-sentence argument that the removal of the sign would display hostility towards religion and improperly prefer those who believe in religion over those who do not believe. That argument was raised in *County of Allegheny*. The Court noted that such an argument was "offensive," "absurd," and "flawed at its foundation." *Id.* at 610. Indeed, the argument ignores the essential purpose of the Establishment Clause—neutrality. By removing the sign, the County is no longer favoring or supporting a particular religion or religion in general over nonbelievers—it is supporting no one, *i.e.*, it is demonstrating neutrality.