James A. TANFORD, Kimberly J. Mac-Donald, David Suess and Joseph Anthony Urbanski, Plaintiffs–Appellants,

v.

Myles BRAND, Doctor, in his individual and official capacities as President of Indiana University; and Kenneth R.R. Gros Louis, Doctor, in his individual and official capacities as Vice President and Chancellor of Indiana University at Bloomington, Defendants–Appellees.

No. 96–3053.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1996.

Decided Jan. 16, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 25, 1997.

Richard A. Waples, Indianapolis, IN, Kenneth J. Falk (argued), Indiana Civil Liberties Union, Indianapolis, IN, for Plaintiffs–Appellants.

Stanley C. Fickle (argued), Robert P. Johnstone, Todd G. Vare, Barnes & Thornburg, Indianapolis, IN, Dorothy A. Frapwell, Michael A. Klein, Office of the University Counsel, Bloomington, IN, for Defendants–Appellees.

Before CUMMINGS, WOOD, Jr., and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Three individuals brought this suit to enjoin the giving of an invocation and benediction during the May 19, 1995 Commencement Ceremony on the Bloomington campus of Indiana University. Plaintiff Tanford is an Indiana Law School professor at Bloomington and plaintiffs MacDonald and Suess were law students there. After their motion for preliminary injunction concerning the May 6, 1995 Commencement Ceremony was denied, the complaint was amended to add Joseph Anthony Urbanski as a plaintiff. He was an undergraduate student majoring in computer science on the Bloomington campus. The district court denied summary judgment to plaintiffs and entered judgment in favor of the defendants. 932 F.Supp. 1139, 1146 (S.D.Ind.1996).

On May 5, 1995, the Bloomington commencement activities began at the University President's home. The following day a university-wide Commencement Ceremony took place in the University's football stadium at 10:00 a.m. Special events followed for graduates of the various schools and their families. A committee consisting of faculty, staff and students was responsible for planning the commencement activities.

Thirty thousand to 35,000 people attended the Saturday morning stadium Commencement Ceremony. All graduating students were invited to attend, but attendance is voluntary and no penalty is imposed for non-attendance. Of the 7,400 graduating students in the undergraduate and graduate schools, approximately 5,000 attended.

Five thousand students and 150 University officials and faculty members formed the academic procession to the Commencement Ceremony. These persons proceeded to chairs placed in the football field whereas the 25,000 to 30,000 visitors and guests were seated in the stadium's permanent seats. The ceremony consisted of the national an-

them, a nonsectarian invocation, an address by the commencement speaker, the conferral of honorary degrees, the presentation of the graduating classes, student remarks, the charge to the graduating classes, the conferral of degrees, the induction ceremony, the singing of the University's song, and a nonsectarian benediction. Fifteen to fifty-five percent of the students graduating from the law school attend the university-wide Commencement Ceremony (Defendants' Br. 3).

In 1840, the University commenced having a nonsectarian invocation and benediction to open and close the morning Commencement Ceremony. A religious leader from the Bloomington area is invited to give the invocation and benediction. The prayers usually refer to a deity.[1] A different person is chosen each year and in addition to the invocation that person is invited to give an uplifting and unifying benediction. In 1995, Father Ralph W. Sims of the St. Paul Catholic Center delivered the invocation and benediction. His parish serves the University's Catholic students. In the previous year, the invocation and benediction were given by Reverend Barbara Carlson of the Unitarian Universalist Church. Over the previous five years the invocation and benediction were delivered by clergymen from the First Presbyterian Church, the First United Methodist Church, and the B'Nai B'Rith Hillel Foundation. Most of those seated in the stadium do not stand for the invocation and benediction.

University President Brand has explained that this ceremony is not to sponsor any particular religious faith or even to endorse religion but is meant to serve secular objectives by emphasizing the solemnity and dignity of the ceremony.

The four plaintiffs may be described as follows:

1. Professor Tanford is 45 years old and has tenure at the University. His under-

---

1. The May 1995 benediction read as follows

Let us pray. Gracious God we have gathered as dreamers. People who believe deep inside that things can be better. We have been called into being by you to make a difference. We like giving. Be with us as we endeavor to reach out to those who feel distance from the joy and the challenge of truth. We pray that

we might touch with our learning those who feel that there is no hope, no reason to believe in life and love, and the possibility itself. Strengthen us for the journeys of mind, of heart, of spirit, of body, so that we might be right in truth for one another, and for our world. We ask this in the name of our common god. Amen.

graduate degree was obtained from Princeton University and he received his J.D. and L.L.M. degrees from Duke University. He has taught at the law school since 1979. He attended only one Commencement Ceremony since 1979 when he commenced teaching law. He attended the 1987 Commencement Ceremony because he was asked to "hood" students there. However, he absented himself when the invocation began, returned for the hooding and left before the benediction. He said that he did not think all 7,000 people who stood during the invocation and benediction believed in the religious message conveyed and that the Commencement Ceremony would not affect the religious beliefs of those in attendance. In 1988 or 1989, he wrote the student newspaper urging the faculty and University community generally to boycott graduations because of the "inappropriateness of having prayer."

2. Third-year law student MacDonald was expected to graduate in May 1995. She had received her Bachelor of Arts degree from Indiana University in May 1992. She stated that she attended the May 1992 Commencement Ceremony when she received her undergraduate degree although she was uncomfortable in participating in a service led by someone of a different faith. She stated that her conscience would be offended if there were an invocation and benediction in 1995. She also attended the Commencement Ceremony in May 1994, being curious about the invocation and benediction. She planned to attend the 1995 Saturday afternoon law school Recognition Ceremony, knowing it would not have an invocation or benediction. She knew that she was not required to attend the stadium Commencement Ceremony and was uncertain whether she would attend if there were an invocation and benediction, even though her parents, family and friends were interested in attending. She stated that she would be bothered if her daughter saw a religious figure on the stage with the University president or giving a prayer. She did not disclose whether she attended the 1995 Commencement Ceremony after the preliminary injunction was denied.

5. Plaintiff Suess was a first-year law student, expected to graduate from the law school in May 1997. He is of the Jewish faith and stated that he was offended by the giving of a nonsectarian invocation and benediction because it is a form of proselytizing although he said it would not have any effect on his personal religious beliefs. He had attended an invocation and benediction at his undergraduate commencement ceremony at the University of Chicago, although he did not participate in it. Suess said he had been advised of the 1995 law school activities by law school friends and quite possibly would attend the morning Commencement Ceremony at the stadium. He did not say whether he attended the ceremony after the preliminary injunction was denied. He was planning to attend the 1995 graduating Recognition Ceremony at the law school although he did not know whether there would be an invocation or benediction. As customary there was none.

4. Urbanski was an undergraduate plaintiff and was added after the preliminary injunction was denied. He opposes graduation prayer because he believes there should be a separation between church and state in a public institution. Prayer makes him uncomfortable. However, he agreed with his public high school policy which permitted students to have a moment of silence or a short prayer during commencement speeches. He expected to attend the 1999 Commencement Ceremony and would stay during the invocation and benediction because it is inconvenient to leave during parts of the ceremony. He would sit quietly until the prayer was over but would not participate in it. His beliefs would not be impacted by the ceremony.

Thomas Bolyard, Director of University Field Services, said one of his responsibilities is to accommodate persons who have special problems or requests related to the Commencement Ceremony. He said it would be an easy matter to accommodate plaintiff Tanford and others who wished to be seated where they could enter or exit the Ceremony at will. He said that it was common for seated students or faculty members to get up and move around during the ceremony. He stated that some students and faculty members arrive late and leave early and often

leave their seats to get a drink or use the restrooms.

In May 1995 the district court denied a preliminary injunction. After filing an amended complaint and answer, plaintiffs filed a motion for summary judgment which was denied in a July 1996 twenty-page entry reported at 932 F.Supp. 1139. We affirm.

In the opinion below, Chief Judge Barker pointed out that under *Lee v. Weisman*, 505 U.S. 577, 586, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (involving a prayer delivered by a clergyman at a middle school graduation), the Constitution guarantees that government "may not coerce anyone to support or participate in religion or its exercise" and under *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111–12, 29 L.Ed.2d 745 (1971), the Constitution requires that state actions "have a secular purpose, that they neither advance nor inhibit religion and * * * that they do not produce excessive government entanglement with religion." 932 F.Supp. at 1142. The district court concluded that plaintiffs were not entitled to relief under either standard.

The district court found *Lee* to be inapplicable because these plaintiffs are adults rather than younger students requiring special solicitude. In this regard, the district court observed that peer pressure is unlikely to dissuade college graduates from protesting, and the opinion below noted that thousands of graduates chose not to attend the stadium morning ceremony and that non-adherents could dissent without being noticed. The opinion also noted that plaintiffs could simply attend the afternoon ceremonies, which do not contain an invocation or benediction, and that in any event the stadium ceremony presented no threat of establishing religion. 939 F.Supp. at 1143–1145, 1147.

The district court also found that the challenged invocation and benediction passed constitutional muster under the *Lemon* test because they served only to solemnize a public ceremony and continue a 155–year–old University tradition and did not dominate the baccalaureate ceremony, nor did they endorse any particular religion or influence religious beliefs. The instruction given to the cleric at the ceremony was merely to "include an uplifting, general message" and involved only a minor contact between the university and local clergy. *Id.* at 1145–1146.

## Discussion

All parties discuss *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649. There Providence, Rhode Island, officials permitted middle and high public school principals to invite members of the clergy to give invocations and benedictions at graduation ceremonies. The middle school principal in question invited a rabbi to deliver prayers at the graduation exercises of Deborah Weisman, daughter of plaintiff. Rabbi Gutterman's invocation thanked God for protecting the rights of minorities, liberty, political process, court system and destiny. His benediction was couched in a similar, nonsectarian vein. Student attendance and participation in this "state-sponsored religious activity" were "in a fair and real sense obligatory" (505 U.S. at 586, 112 S.Ct. at 2655). The Court added: "The government involvement with religious activity in this case is pervasive, to the point of creating a state-sponsored and state-directed religious exercise in a public school" (505 U.S. at 587, 112 S.Ct. at 2655).

Justice Kennedy's majority opinion in *Lee* explained: "There are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools" (505 U.S. at 592, 112 S.Ct. at 2658). Finally, in closing the Court stressed that the objecting student was in effect compelled to attend and participate in an explicit religious exercise she had no real alternative to avoid (505 U.S. at 598, 112 S.Ct. at 2661).

█ Unlike *Lee*, here there was no coercion—real or otherwise—to participate. Many students chose not to attend the stadium exercises. Others left during the invocation, then returned and exited before the benediction. Still others sat during both events, as did most stadium attendees. At the afternoon ceremonies, no prayer was involved. Finally, the mature stadium attendees were voluntarily present and free to ignore the cleric's remarks. Most remained

seated. Under these facts, in which the special concerns underlying the Supreme Court's decision in *Lee* are absent, the district court correctly determined that *Lee* does not require the challenged practices to be struck down. Cf. *Widmar v. Vincent,* 454 U.S. 263, 274 n. 14, 102 S.Ct. 269, 276 n. 14, 70 L.Ed.2d 440 (1981) ("University students * * * are less impressionable than younger students and should be able to appreciate. that the University's policy is one of neutrality of religion.").

 *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, is plaintiffs' other principal reliance. There Pennsylvania and Rhode Island each gave financial aid to church-related educational institutions, a far cry from the non-denominational invocation and benediction at the Bloomington commencement.

Here the University's practice of having an invocation and benediction at its commencements has prevailed for 155 years and is widespread throughout the nation. Rather than being a violation of the Establishment Clause, it is "simply a tolerable acknowledgment of beliefs widely held among the people of this country." *Marsh v. Chambers,* 463 U.S. 783, 792, 103 S.Ct. 3330, 3336, 77 L.Ed.2d 1019 (1983). As we held in *Sherman v. Community Consolidated School District 21,* 980 F.2d 437 (7th Cir.1992), Illinois public schools may lead the Pledge of Allegiance, including its reference to God, without violating the Establishment Clause of the First Amendment. Similarly here, the invocation and benediction serve legitimate secular purposes of solemnizing public occasions rather than approving particular religious beliefs. *Lynch v. Donnelly,* 465 U.S. 668, 693, 104 S.Ct. 1355, 1369–70, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring). As the concurring opinion in *Sherman* summarized, "the First Amendment was not intended to prohibit states [here a university] from sanctioning ceremonial invocations of God. Such * * * action simply does not amount to an establishment of religion" (980 F.2d at 448). Finally, as the district court correctly determined, the University's inclusion of a brief non-sectarian invocation and benediction does not have a primary effect of endorsing or disapproving religion, and there is no ex-

cessive entanglement of church and state by virtue of the University's selection of a cleric or its instruction to the cleric that his or her remarks should be unifying and uplifting. Insofar as there is any advancement of religion or governmental entanglement, it is *de minimis* at best. See *Metzl v. Leininger,* 57 F.3d 618, 620 (7th Cir.1995) (observing that "a law that promotes religion may nevertheless be upheld * * * because the effect in promoting religion is too attenuated to worry about").

Judgment affirmed.