KRAVITCH, Senior Circuit Judge,
Specially Concurring:
I concur in both the reasoning and result of the majority opinion; on its face, the policy of the Duval County School Board violates the Establishment Clause of the First Amendment as the Supreme Court has interpreted it in both Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) and Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Contrary to the dis *1252 sent’s characterizations, the grounds of the majority opinion are quite narrow, and I write separately only to emphasize the particular points that I believe dictate the outcome of today’s decision.
I. Lee v. Weisman
As the majority opinion succinctly observes, the Supreme Court rested its decision in Lee on two “dominant facts”: (1) “[s]tate officials direet[ed] the performance of a formal religious exercise” and (2) even for objecting students “attendance and participation in the state-sponsored religious activity [were] in a fair and real sense obligatory....” Lee, 505 U.S. at 586, 112 S.Ct. at 2655. In Lee, a high school principal decided to include a prayer at graduation, selected a local rabbi to deliver the prayer, and instructed the rabbi that the prayer be nonsectarian, giving him a copy of “Guidelines for Civic Occasions” to assist him in choosing appropriate material. Id. at 581, 112 S.Ct. at 2652. It was this unabashed state involvement in composing and directing a formal prayer exercise that led the Court to find that the prayer “bore the imprint of the State,” id. at 590, 112 S.Ct. at 2657, and to conclude that the principal’s practice created a “state-sponsored and state-directed religious exercise in a public school,” id. at 581, 112 S.Ct. at 2655. As the Lee Court held that the prayer, delivered from the podium during the graduation ceremony, constituted a formal religious exercise, the difficult question in the present case is whether a student speaker’s decision to pray under similar circumstances is attributable to the state.
Under most circumstances, the Establishment Clause presents no obstacle to a student’s decision to pray on school premises or during a school event. Contrary to popular belief, the courts never have interpreted the Establishment Clause to prohibit any individual student from praying, for example, before a meal or before a test.[1] The dissent suggests that the majority comes “perilously close” to adopting such a course of action in the context of public high school graduations, Dissent at 1256, but this case presents no occasion to rewrite settled Establishment Clause jurisprudence, and today’s decision neither aspires to nor achieves that result.[2] The majority opinion acknowledges that, under some circumstances, a student’s individual decision to pray from the podium at a high school graduation may be constitutional. Cf. Doe v. Madison Sch. Dist. No. 321, 147 F.3d 832 (9th Cir.1998) (upholding a policy that permitted the top four students to speak on any topic of their choosing without state approval), vacated as moot, 177 F.3d 789 (9th Cir.1999).[3] As the parties to this case have emphasized, the Establishment Clause applies only to the federal and state governments and has no effect on prayer that genuinely is private in *1253 character. The majority opinion recounts — m convincing detail — why the Du-val County School Board’s policy produces speech of a public rather than private character, and I will not repeat that analysis here.[4]
I acknowledge that the Fifth Circuit’s decision in Jones v. Clear Creek Indep. Sch. Dist., 977 F.2d 963 (5th Cir.1992), which holds that “a majority of students can do what the State acting on its own cannot do to incorporate prayer in public high school graduation ceremonies,” is at odds with the reasoning of our opinion today. Id. at 972. In my view, the Jones decision to uphold a student vote to include prayer at a high school graduation, and in particular the specific language quoted above, strains the boundaries of Lee and conflicts with the Supreme Court’s decision in West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185-86, 87 L.Ed. 1628 (1943) (explaining that the protections of the Bill of Rights are not subject to waiver on the basis of a majority vote). Moreover, to the extent Lee requires us to evaluate considerations of psychological coercion, it seems to me that a prayer from the lips of a popularly elected student representative is far more likely to coerce audience participation than one from a member of the clergy selected by the school principal.
II. The Continuing Relevance of Lemon v. Kurtzman
Although the Supreme Court’s Lemon decision has been the target of much academic and judicial criticism, Lemon remains the law of the land and of this circuit. See Maj. Op. at 1243 (citing Lamb’s Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 395 n. 7, 113 5.Ct. 2141, 2148 n. 7, 124 L.Ed.2d 352 (1993); Chabad-Lubavitch v. Miller, 5 F.3d 1383, 1388 & n. 8 (11th Cir.1993)).[5] Notwithstanding Lemon’s continued vitality as part of our general Establishment Clause jurisprudence, it is not immediately obvious that we still should apply Lemon’s analysis, in addition to the more specifically applicable analysis in Lee, in cases that involve prayer at high school graduations. Upon examination, however, I am convinced that Lemon remains binding law even in this particular area.[6]
Beginning with the Supreme Court’s four opinions in Lee, I note that the only opinion that declares the Lemon test irrelevant to the issues at hand is that of the dissent.[7] See Lee, 505 U.S. at 644, 112 *1254 S.Ct. at 2685 (Scalia, J., dissenting). Although Justice Kennedy’s majority opinion recounts the analysis of the district and circuit courts, both of which declared the policy in question unconstitutional under the Lemon test, the opinion pointedly sidesteps Lemon.[8] Rather than accepting the invitation of both the petitioning school principal and the Solicitor General to overrule or modify Lemon, the majority declared that it need not address the case because the state involvement in the prayer and coercion present in Lee made it an easy case that the Court could “decide without reconsidering the general constitutional framework by which public schools’ efforts to accommodate religion are measured.” Lee, 505 U.S. at 587, 112 S.Ct. at 2655. By suggesting that the Establishment Clause problems implicated in the practice at issue in Lee were so obvious as to compel the-result, the majority opinion seems to require (or at least permit) courts to apply the general Lemon framework in more difficult cases in which the state’s involvement and coercion are not as plain.
Indeed, every court that has addressed the issue of prayer at graduation since Lee has assumed this conclusion and has applied both the Lee and Lemon analyses. In Jones v. Clear Creek Indep. Sch. Dist., a case the Supreme Court remanded in light of Lee, for example, the Fifth Circuit decided that a full reconsideration of the case required the court to apply the three-pronged test of Lemon in addition to considering the implications of Lee. See 977 F.2d 963, 966 & n. 8 (5th Cir.1992) (quoting Lynch v. Donnelly, 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984) for the proposition that the Court is “ ‘unwilling to be confined to any single test or criterion in this sensitive area’ ”) (internal punctuation omitted).[9] The Third Circuit, writing en banc, took a more forceful view of the question and specifically stated that because Lemon was still good law the court was bound to apply it despite its conspicuous absence from the Lee analysis. See ACLU v. Black Horse Pike Reg. Bd. of Educ., 84 F.3d 1471, 1484 (3d Cir.1996) (en banc). Even the Black Horse Pike dissenters agreed that deference to precedent required the court to apply Lemon in addition to Lee. Id. at 1493 (Mansmann, J., dissenting). The Ninth and Seventh Circuits also have assumed, without discussion, that the Lemon test continues to apply to graduation prayer cases and have applied Lemon in addition to Lee. See Doe v. Madison Sch. Dist. No. 321, 147 F.3d 832, 836-38 (9th Cir.1998), vacated as moot, 177 F.3d 789 (9th Cir.1999); Harris v. Joint Sch. Dist. No. 211, 41 F.3d 447, 457-58 (9th Cir.), vacated as moot, 515 U.S. 1154, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995); id. at 460 n. 4 (Wright, J., dissenting) (disagreeing with the result but noting the applicability of the Lemon test); Tanford v. Brand, 104 F.3d 982, 986 (7th Cir.1997) (applying Lemon in addition to Lee in a challenge to prayer at a university graduation). Similarly, the district court *1255 in this case applied both Lemon and Lee. See Adler v. Duval County Sch. Bd., 851 F.Supp. 446, 450-51 (M.D.Fla.1994) (“Adler I ”). In short, although some courts and individual judges have disagreed over what manner of prayer the Supreme Court’s precedents might permit at a public graduation, to our knowledge no count nor single judge has published an opinion that even suggests that Lemon is no longer applicable to cases involving graduation prayer or that Lee presents the only acceptable or relevant analysis.
Finally, even were we to accept arguen-do the dissent’s suggestion that the Lemon test is inapplicable to cases involving prayer at high school graduation and “unnecessary” to evaluate Duval County’s policy, Dissent at 1259, no authority suggests that we may ignore the underlying principles of Lemon, developed in cases both before and after the Supreme Court decided that case.[10] In 1947, almost 25 years before Lemon, the Supreme Court explained that the Establishment Clause “means at least” that the state can neither “force nor influence” its citizens to attend or refrain from attending any church. Everson v. Board of EduC., 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947). Indeed, the Supreme Court’s holding in Lee easily could be read as nothing more than a reaffirmation of that narrow principle: the state may not coerce (or, more controversially, encourage) its citizens to participate in formal religious exercises.
Similarly, in a case decided three years before Lemon, the Supreme Court relied on the state’s religious purpose in enacting a statute to strike down a state law that criminalized the teaching of evolution in public schools. See Epperson v. Arkansas, 393 U.S. 97, 107-09 & n. 16, 89 S.Ct. 266, 272-73 & n. 16, 21 L.Ed.2d 228 (1968) (quoting a campaign advertisement that supported the statute). Although the state’s motivation, “to suppress the teaching of a theory which, it was thought, ‘denied’ the divine creation of man,” id. at 109, 89 S.Ct. at 273, was more extreme than the school board’s purpose here, the difference is one only of degree; both practices violate the broader principle that the state may not act with the primary purpose of advancing religion.
The Supreme Court repeatedly has reaffirmed this principle in the years since Lemon by applying it in the context of that framework. In Stone v. Graham, for example, the Court rejected the Kentucky state legislature’s “avowed” secular purpose for posting the Ten Commandments in public schools and declared the practice unconstitutional because it found that the state’s purpose was “plainly religious in nature.” 449 U.S. 39, 41, 101 S.Ct. 192, 194, 66 L.Ed.2d 199 (1980) (per curiam). Similarly, in Wallace v. Jaffree, the Court twice struck down Alabama laws requiring a moment of silence in public schools because the legislature passed them solely for religious purposes. See 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). Finally, in Edivards v. Aguillard, the Court relied on its own reading of a statute that constrained the teaching of evolution in public schools and the statements of the state legislator who sponsored the law to declare the state’s alleged secular purpose a sham. See 482 U.S. 578, 585-95 & n. 15, 107 S.Ct. 2573, 2578-83 & n. 15, 96 L.Ed.2d 510 (1987). The Court struck the law down because its primary purpose was to advance religion and it therefore had no “clear secular purpose.” Id. at 585, 107 S.Ct. at 2573. See also Jager v. Douglas County Sch. Dist., 862 F.2d 824, 829-30 (11th Cir.1989) (dismissing the state’s asserted secular purpose and striking the state’s practice of permitting prayer over a public address system at high school football games as unconstitutional because its *1256 actual primary purpose was to advance religion).
This case forces us to decide whether the school board violated the Establishment Clause by attempting to make an end-run around Lee when the board’s policy has the clearly evidenced, primary purpose and effect of advancing prayer (and thus religion) at public graduations. The Supreme Court’s cases, both before and after Lemon, suggest that such a policy cannot survive constitutional muster, and even Justice Kennedy’s majority opinion in Lee contains some (albeit admittedly scant) support for the proposition that the object of the state’s exercise may not be to advance religion.[11] On the record available to us in this case, the evidence convincingly demonstrates that the school board acted with the purpose of permitting a student speaker to lead the audience in prayer at high school graduations. In addition to the historical backdrop and the contemporaneous statements of policy makers,[12] the plain terms of the policy indicate the school board’s primary purpose to permit prayer. The policy allows a two minute message at the beginning and/or end of the ceremony; one need not be clairvoyant to predict that prayer is the most natural “message” this format is likely to produce. Indeed, one only need be a historian; during the only year for which we have evidence in the record, the policy produced student-led prayer from the podiums of ten out of seventeen graduation ceremonies. Under such circumstances, I believe that the principles crafted in the cases discussed above require us to hold the policy unconstitutional, without regard to Lee or even specific citation to Lemon.
Having concluded that Lemon v. Kurtzman has survived as a matter of general Establishment Clause jurisprudence and that the case’s three-pronged analysis — or at least the principles underlying that analysis — remains relevant on the more particular question of prayer at public high school graduations, it remains only to say that I agree with the majority’s application of the Lemon framework to the facts of this case. In my view, the religious purpose and effect of the school board’s policy are plain in the record and on the face of the policy; the policy, therefore, cannot stand.

. See generally Daniel N. McPherson, Student-Initiated Religious Expression in the Public Schools: The Need for a Wider Opening in the Schoolhouse Gate, 30 Creighton L. Rev. 393 (1997) (discussing "flagpole prayer” where students spontaneously congregate to pray).

. In particular, I object to the dissent's contention that the majority opinion would outlaw all private religious expression at a graduation, see Dissent at 1256, and the suggestion that our decision prevents a speaker from discussing religious themes or thoughts, id. at 9, 31-32 & n. 8. Our decision today, as the Supreme Court’s decision in Lee, concerns prayer — a formal religious exercise — delivered at the state's direction from the podium at a high school graduation. See Lee, 505 U.S. at 586 & 589, 112 S.Ct. at 2655 & 2656 (describing prayer as a formal religious exercise); Jager v. Douglas County Sch. Dist., 862 F.2d 824, 830 (11th Cir.1989) (explaining that prayer is the quintessential religious practice). I find nothing in the majority opinion that supports the dissent’s concerns regarding such extreme further implications or consequences.

. We need not decide today whether the now-vacated Madison panel decision was correct or even persuasive. Nor must we conjure up a host of hypothetical circumstances under which the Madison panel's reasoning would be more or less convincing. Today’s opinion properly limits the scope of our decision of *1253 the policy and circumstances presently under review.

. Although the policy sets forth secular criteria for selecting speakers, even the limited record presently available includes disturbing allegations and evidence that the speakers who addressed the audience at graduation ceremonies pursuant to the policy were not selected according to wholly secular criteria and, in at least one case, was not a student but a member of the faculty. As the majority opinion observes, conduct of that nature plainly falls within the Supreme Court’s proscriptions in Lee.

. The Supreme Court has continued to apply Lemon by name and did so as recently as two terms ago. See Agostini v. Felton, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Following the Court’s lead, we also have continued to apply the Lemon test in Establishment Clause cases. See Bown v. Gwinnett County Sch. Dist., 112 F.3d 1464, 1468 (11th Cir.1997).

. As the majority explains, to survive scrutiny under the Lemon test, the challenged policy must: (1) have a secular purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) not foster excessive government entanglement with religion. See Lemon, 403 U.S. at 612-13, 91 S.Ct. at 2111.

. Two of these same dissenters (Justices Sca-lia and Thomas), as well as Justice Kennedy, expressed concern about the Court's opinion in Lamb’s Chapel, joined by two of the Lee dissenters (Justices Rehnquist and White), which "resurrected” Lemon. See Lamb’s Chapel, 508 U.S. at 395 & n. 7, 113 S.Ct. at 2148 & n. 7 (applying Lemon and adding that the Court has not overruled the case); id. at 397, 113 S.Ct. at 2149 (Kennedy, J., concurring in judgment) (calling the majority’s citation of Lemon "unsettling and unnecessary”); id. at 398, 113 S.Ct. at 2149 (Scalia, J., dissenting) (likening Lemon to a "ghoul in a late-night horror movie that repeatedly sits up in its grave ... after being repeatedly killed and buried”). More significantly, Justice Scalia subsequently has conceded error in his eulogy *1254 for Lemon and has observed (albeit with considerable dismay) that, despite the Court's recent fondness for deciding Establishment Clause cases without reference to Lemon, the lower courts are not free to ignore the case because they may not discard Supreme Court precedent at will. See Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet, 512 U.S. 687, 750-51, 114 S.Ct. 2481, 2515, 129 L.Ed.2d 546 (1994) (Scalia, J., dissenting).

. Justice Blackmun's concurring opinion traces the evolution of the Court's Establishment Clause case law, including the development of the Lemon test, and declares that nothing in the majority opinion conflicts with the established jurisprudence. See Lee, 505 U.S. at 600-04, 112 S.Ct. at 2662-64 (Black-mun, J., concurring). Justice Souter's concurrence also cites Lemon with approval but does not address the continued viability of the test. Id. at 627, 112 S.Ct. at 2676 (Souter, J., concurring). Justices Stevens and O’Connor joined both concurrences.

. The Fifth Circuit reaffirmed the continued applicability and relevance of the Lemon test in school prayer cases, in addition to the analysis in Lee, in Ingebretsen v. Jackson Public Sch. Dist., 88 F.3d 274, 278-79 (5th Cir.1996), in Doe v. Duncanville Indep. Sch. Dist., 70 F.3d 402 (5th Cir.1995), and again in Doe v. Santa Fe Indep. Sch. Dist., 168 F.3d 806 (5th Cir.1999).

. See, e.g., Kent Greenawalt, Quo Vadis: The Status and Prospects of “Tests” Under the Religion Clauses, 1995 Sup.Ct. Rev. 323, 361 ("What courts and lawyers should do instead [of applying Lemon ] is focus on narrower principles relevant for particular circumstances, drawing these principles partly from the very Supreme Court cases decided under the Lemon test.”).

. The relevant passage provides:
The question is not the good faith of the school in attempting to make the prayer acceptable to most persons, but the legitimacy of its undertaking that enterprise at all when the object is to produce a prayer to be used in a formal religious exercise which students, for all practical purposes, are obliged to attend.
See Lee, 505 U.S. at 588-89, 112 S.Ct. at 2656 (emphasis added).

. Neither the Supreme Court nor our own court has felt compelled to ignore record evidence regarding historical realities or the contemporary statements of policymakers in evaluating the religious purpose of a particular policy under Lemon. See Aguillard, 482 U.S. at 585-95 & n. 15, 107 S.Ct. at 2578-83 & n. 15; Jaffree, 472 U.S. at 56-59, 105 S.Ct. at 2489-91; Church of Scientology v. City of Clearwater, 2 F.3d 1514, 1527, 1530-34 (11th Cir.1993); Jager, 862 F.2d at 829-30. As the majority notes, the district court committed error when it acknowledged that our decision in Jager relied upon such evidence but ignored the case on this point in part because the Jager panel was not unanimous. See Adler I, 851 F.Supp. at 452 n. 8. Just as split decisions from the Supreme Court bind all lower courts, district courts are not free to disregard circuit precedent on the ground that a particular panel did not speak with one voice.